UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KALWEEN RODRIGUEZ,

        Plaintiff,

  -against-

THE CITY OF NEW YORK, a municipal entity;
NEW YORK CITY POLICE COMMISSIONER
RAYMOND KELLY; NEW YORK CITY
POLICE OFFICER MASOOD A. SYED
(Shield No. 23454); individually and in their
official capacities,

        Defendants.
------------------------------------------------------------x

**COMPLAINT**

**JURY TRIAL DEMANDED**

10-CV-_____

ECF Case

COGAN, J.

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which the plaintiff, KALWEEN RODRIGUEZ, seeks relief for defendants' violation, under color of state law, of his rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York, on or about January 20, 2009.

2.    Defendants, THE CITY OF NEW YORK, a municipal entity; NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY; NEW YORK CITY POLICE OFFICER MASOOD A. SYED (Shield No. 23454), acting individually and in their official capacities, jointly and severally, did cause plaintiff KALWEEN RODRIGUEZ, to be subject to, inter alia, excessive and unreasonable force and false arrest and imprisonment causing him serious physical and mental injury.

3. Plaintiffs seek compensatory and punitive damages, declaratory relief, an award of attorney fees and costs, and such other and further relief as the Court deems proper.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 (3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

5. Plaintiff's claims for declaratory relief is authorized by 28 §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

6. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

7. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## JURY DEMAND

8. Plaintiff demands trial by jury in this action on each and every one of his claims.

## PARTIES

9. Plaintiff, KALWEEN RODRIGUEZ, is a citizen of the United States, and is and was at all times relevant herein a resident of the City of New York, County of Kings, State of New York.

10. Defendant CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police

department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11. Defendant RAYMOND KELLY, is and was, at all times relevant to this complaint, Commissioner of the New York City Police Department ("NYPD") and a final policy maker for purposes of the NYPD's policies, practices and customs.

12. Defendant MASOOD A. SYED, Shield No. 23454, is or was at all times relevant to this complaint, a police officer employed by the NYPD and in the Transit Unit

13. Defendants RAYMOND KELLY and MASOOD A. SYED (collectively, "the individual defendants") are, or at all times relevant to the complaint, were, employees, agents, servants, and/or officers of the City of New York and/or the NYPD.

14. At all times relevant herein, each of the individual defendants acted under color of law in the course and scope of his or her duties and functions as an agent, employee, servant and/or officer of the City and/or NYPD in engaging in the conduct described herein.

15. At all times relevant herein, the individual defendants have acted for and on behalf of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as officers, agents, employees, and/or servants of the City and/or NYPD.

16. At all times relevant herein, the individual defendants violated clearly established constitutional standards under the First, Fourth, Fifth and Fourteenth Amendments of which a reasonable police officer and/or public official under his or her respective circumstances would have known.

## COMPLIANCE WITH GENERAL MUNICIPAL LAW

17. Plaintiff served notices of claim upon defendant CITY OF NEW YORK within 90 days of the events giving rise to plaintiff's claims and has otherwise complied with the statutory requirements of the General Municipal Law of the State of New York.

18. Although more than 30 days have elapsed since service of the notices of claim, defendant CITY OF NEW YORK has neglected to adjust or pay such claims.

19. This action is being filed within a year and 90 days of the events giving rise to plaintiffs' claims.

## STATEMENT OF FACTS

20. Plaintiff KALWEEN RODRIGUEZ, of Hispanic origin, is a resident of Brooklyn, New York, and a citizen of the United States.

21. On the evening of January 20, 2009, plaintiff received permission from the token booth attendant to enter the gate leading to the subway trains at the station at Junius Street and Sutter Avenue in Brooklyn, New York.

22. After entering, plaintiff was stopped by defendant MASOOD A. SYED and told to produce identification. After plaintiff gave him his wallet, defendant removed plaintiff's papers from the wallet threw the papers to the floor along with plaintiff's keys and ipod.

23. Although defendant Syed was aware that the token booth attendant had given plaintiff permission to enter, Syed placed plaintiff in a headlock and threw him to the floor without any justification whatsoever, causing injury to plaintiff's hand.

24. Plaintiff then placed a 911 call to seek assistance.

25. Defendant Syed grabbed plaintiff, handcuffed him and forcibly pushed him into one of the steel partitions, causing plaintiff to sustain injury to his head.

4

35. As a direct and proximate result of the actions and conduct of the defendants described above, plaintiff KALWEEN RODRIGUEZ suffered deprivation of his constitutional and state law rights; physical and psychological injuries; pain and suffering; emotional distress; damage to reputation; loss and damage to property; legal fees and medical and legal expenses.

### FIRST CAUSE OF ACTION
(Constitutional Violations -42 U.S.C. § 1983)
Against SYED

36. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

37. Defendants, under color of state law, subjected plaintiffs to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983 thereby depriving plaintiff of his rights, privileges and immunities secured by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights:

  A. freedom to engage in protected speech and freedom of movement;

  B. freedom from unreasonable seizure of their persons, including excessive force;

  C. freedom from arrest without probable cause;

  D. freedom from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, and of which wrongful detention plaintiff was aware and to which they did not consent;

  E. freedom from the lodging of false charges against him by police officers;

  F. freedom from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice.

  G. freedom from abuse of process;

  H. freedom from deprivation of liberty without due process of law; and

  I. equal protection, privileges and immunities under the laws.

38. Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CAUSE OF ACTION
(Monell Claim Against Defendant CITY-42 U.S.C. § 1983)

39. Plaintiff realleges and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

40. All of the acts and omissions by the named individual police officer described above were carried out pursuant to overlapping policies and practices of the City of New York which were inexistence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

41. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

42. The actions of the individual police defendants resulted from and were taken pursuant to the following de facto policies and/or well-settled and widespread customs and practices of the CITY, which are implemented by members of the police department:

  a. police officers assigned to the Transit Division, are encouraged by their

7

        supervisors and/or tacitly allowed by the NYPD, specifically defendant Police Commissioner KELLY, physically to brutalize suspects and arrestees without consequence -i.e., without fear of reprimand, discipline or even re-training by the Department;

b.     NYPD officers engage in systemic and ubiquitous perjury, both oral and written, to cover-up constitutional and state law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Police Commissioner KELLY who all:

        (i)     tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and

        (ii)     encourage and/or fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates against those civilians; and

8

  c.  the NYPD, with the knowledge, approval and encouragement of Police Commissioner KELLY, fails to properly train, supervise and/or discipline officers concerning the First Amendment rights of citizens who attempt to exercise their First Amendment right in the subways and elsewhere in the City.

43. The existence of the foregoing unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the NYPD and the CITY, including, without limitation defendant Commissioner KELLY.

44. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including defendant Commissioner KELLY, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

45. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein.

46. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are further evidenced, inter alia, by the following:

a. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [New York City Police] Department allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate than the devastating consequences of corruption itself. As a result, its corruption controls minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputation tainted -especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resourced anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority -which is exactly what this Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment.
> For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.

Mollen Commission Report, pp. 2-3.

b. Accordingly, in 1990, the Office of Special Prosecutor, which investigated charges of police corruption, was abolished.

c. The Mollen Commission concluded that police perjury and falsification of official records

> is probably the most common form of police corruption facing the criminal justice system
>
> ...
>
> ... Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their supervisors. Corrupt and honest officers told us that their

10

supervisors knew or should have known about falsified versions of searches and arrests and never questioned them.

> . . . What breeds this tolerance is a deep-rooted perception among many officers of all ranks within the Department that nothing is really wrong with compromising facts to fight crime in the real world. Simply put, despite the devastating consequences of police falsifications, there is a persistent belief among many officers that it is necessary and justified, even if unlawful. As one dedicated officer put it, police officers often view falsification as, to use his words, "doing God's work" -doing whatever it takes to get a suspected criminal off the streets. This attitude is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty."

Mollen Commission Report, pp. 36, 40-41.

    d.    Significant evidence of perjured sworn statements systemically provided by officers to attempt to cover-up or justify unlawful mass arrests of 1800 people has been and continues to be developed in the consolidated litigation arising out of the 2004 Republican National Convention. See, e.g., Second Amended Class Action Complaint in *MacNamara, et al. v. City of New York, et al.*, 04-CV-9216 (SDNY) at ¶¶ 73(G) -(I),102,107,112,119,124,129, 143, 158, etc., 228, 232, 240, 259.

    e.    New York County District Attorney Robert Morgenthau has been quoted as acknowledging that in the NYPD there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully.

    f.    In 1985, former Police Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD.

    g.    Former New York City Police Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

    h.    Regarding defendant CITY's tacit condonement and failure to supervise,

11

discipline or provide remedial training when officers assigned to drug enforcement units engage in excessive force, the Civilian Complaint Review Board is a City agency, allegedly independent from the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse of civilians. It is rare that the CCRB substantiates an allegation of police misconduct.[1] When it does, however, defendant Police Commissioner KELLY controls whether the NYPD pursues the matter and he alone has authority to impose discipline on the subject officer(s). Since 2005, during KELLY's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRE-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and 30% so far in 2008. As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped so far in 2008. See 8/20108 Daily News Editorial, "City leaders must get serious about policing the police."

    i.    The CCRB itself has expressed concern over the NYPD's increasing

---

[1] In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). See CCRB Jan-Dec. 2007 Status Report at p. 19, available at http://www.nyc.govlhtml/ccrb/pdffccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted de facto policy and/or well-settled and widespread custom and practice in the NYPD whereby police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

12

failure to discipline officers against whom complaints of abuse have been substantiated. The CCRB's 2007 status report notes that in that year the NYPD processed cases against 296 officers whom the CCRB had found engaged in misconduct. The NYPD, under defendant Commissioner KELLY, declined to pursue any disciplinary action against 102 of those officers (34%), representing a 10-fold increase from 2006 in the percentage of officers found to have committed misconduct whom the Department chose not to discipline. Of the 172 officers that the Department did discipline, 94 received only verbal "instructions," and only 9 received any punishment more serious than a command discipline, compared to 49 in 2003, when the number of substantiated CCRB complaints was about 15% higher. See CCRB Jan-Dec. 2007 Status Report at p. 2, available at http://www.nyc.govlhtml/ccrb/pdf/ccrbann2007_A.pdf.

    j.    The above-noted failure to properly train, supervise and/or discipline officers concerning the First Amendment rights of subway riders in the City of New York to exercise their First Amendment rights without suffering retaliatory use of force, false arrest and/or malicious prosecution is evidenced by, inter alia, the number of cases, including this one, that plaintiffs counsel alone has handled or is handling in recent history. See, e.g., Ghoreishian and Dickson v. City a/New York, et al., 08-CY-5296 (SDNY); Stuart, et al. v. City a/New York, et al., 07-CY-3750 (EDNY).

    k.    Upon information and belief, the above-noted failure to properly train, supervise and/or discipline officers concerning the First Amendment rights of bystanders is further evidenced by, inter alia, the absence of any training materials or curriculum on the issue of bystanders in the Police Academy and post-Academy trainings.

13

47. The plaintiff's injuries were a direct and proximate result of the defendant CITY and its agency, the NYPD's, wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

48. Defendant CITY knew or should have known that the acts alleged herein would deprive plaintiff of his rights, in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 6, 8, 11, and 12 of the Constitution of the State of New York.

49. The defendant CITY is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the NYPD, and to require compliance with the constitutions and laws of the State of New York and the United States.

### THIRD CAUSE OF ACTION
(Respondeat Superior)
Against CITY OF NEW YORK

50. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs if fully set forth herein.

51. Defendant CITY is liable for the actions of defendants SYED and Kelly under the doctrine of *respondeat superior*.

### FOURTH CAUSE OF ACTION
(New York State Constitutional Violations)
Against SYED

52. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

53. Such conduct breached the protections guaranteed to plaintiffs by the New York State Constitution, Article I, §§ 6, 8, 11, and 12, including their rights of:

    A. freedom to engage in protected speech and freedom of movement;

    B. freedom from unreasonable seizure of his person, including excessive force;

    C. freedom from arrest without probable cause;

    D. freedom from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, and of which wrongful detention plaintiff is aware and to which he did not consent;

    E. freedom from the lodging of false charges against him by police officers;

    F. freedom from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice;

    G. freedom from abuse of process;

    H. freedom from deprivation of liberty without due process of law; and

    I. equal protection, privileges and immunities under the laws.

54. Defendants' deprivation of plaintiff's rights under the New York State Constitution resulted in the injuries and damages set forth above.

### FIFTH CAUSE OF ACTION
(False Arrest)
Against SYED

55. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

56. Acting under color of law, defendant SYED unlawfully caused, and approved plaintiff's arrest without probable cause or other legal justification.

57. The individual defendant committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
(False Imprisonment)
Against SYED

58. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

59. Acting under color of law, defendant SYED unlawfully caused, ordered, approved and/or knowingly failed to prevent plaintiff's wrongful detention, thereby depriving him of his liberty without good faith, reasonable suspicion or other legal justification.

60. Plaintiff was conscious of, and did not consent to, his confinement.

61. The individual defendant committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

## SEVENTH CAUSE OF ACTION
(Malicious Prosecution)
Against SYED

62. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

63. Individual defendant SYED, acting under color of law, commenced and continued, and/or caused to be commenced and continued, a criminal prosecution against plaintiff that was lacking in probable cause, instituted in malice, and which ultimately terminated in plaintiffs' favor.

64. Defendant committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

### EIGHTH CAUSE OF ACTION
(Assault and Battery)
Against SYED

65. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66. Defendant SYED, without just cause, willfully and maliciously touched plaintiff without his authorization and used physical force on plaintiff, causing plaintiff to suffer physical and emotional injuries.

67. Defendant committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

### NINTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
Against SYED

68. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

69. Defendant SYED, by his aforementioned acts, did intentionally, willfully, and knowingly cause plaintiff to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

70. Defendant SYED committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and is therefore liable for punitive damages.

17

## TENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
Against SYED

71. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

72. The individual defendant, by his aforementioned acts, did negligently cause plaintiff to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

## ELEVENTH CAUSE OF ACTION
(Negligence of the Individual Defendants)
Against SYED

73. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

74. The individual defendant, by his aforementioned acts, negligently failed to use due care in the performance of their duties in that they, among other negligent acts:

   a. failed to perform his duties as a reasonably prudent and careful police officer or supervisor would have done under similar circumstances; and/or

   b. carelessly and recklessly seized and detained plaintiff without a warrant or probable cause; and/or

   c. carelessly and recklessly failed to intervene in the unlawful use of force against plaintiff and unlawful arrest, detention and prosecution.

75. The negligent actions of the individual defendant directly and proximately caused plaintiff's injuries and damages set forth above.

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all defendants:

   (a) a declaration that defendants violated the federal civil rights of plaintiff;

  (b) compensatory damages for physical, emotional, and economic injuries suffered by plaintiff by reason of defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial;

  (c) punitive damages against the individual defendants to the extent allowable by law;

  (d) attorneys fees;

  (e) the costs and disbursements of this action; and

  (f) such other and further relief as appears just and proper.

Dated: Brooklyn, New York
   March 1, 2010

                     _____
                     Michael W. Warren (MW1187)
                     Evelyn W. Warren (EW5223)
                     MICHAEL W. WARREN, P.C.
                     580 Washington Avenue
                     Brooklyn, New York 11238
                     (718) 230-9790

                     *Attorneys for the Plaintiff*